# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| WASHINGTON TEACHERS' UNION, LOCAL #6, AMERICAN FEDERATION OF TEACHERS, AFL-CIO, <br><br>   Plaintiff/Counter-Defendant, <br><br>    v. <br><br> AMERICAN FEDERATION OF TEACHERS, AFL-CIO, <br><br>   Defendant/Counter-Plaintiff. |

Civil Action No. 10-1387 (CKK)

**MEMORANDUM OPINION**
(October 22, 2010)

      This case involves a dispute between the Washington Teachers' Union, Local #6, American Federation of Teachers, AFL-CIO (the "WTU") and its parent union, the American Federation of Teachers, AFL-CIO (the "AFT") relating to the WTU's failure to conduct a timely election for its officers prior to July 1, 2010. On September 1, 2010, the Court issued an order preliminarily enjoining the AFT from imposing an emergency administratorship on the WTU for the purpose of conducting the WTU's election. However, that preliminary injunction expired on September 16, 2010, when the AFT Executive Council ratified an administratorship following a hearing pursuant to Article VI, Section 15 of the AFT Constitution. On September 17, 2010, the parties filed a [25] Joint Status Report indicating that "the parties had an agreement in principle in which WTU will consent to the administratorship and to take such steps as are necessary to conduct the election in accordance with the rules set forth in the [AFT's] Decision and to cooperate with the appointed administrator in developing the voter eligibility list and such other

steps as are necessary to the conduct of a prompt and fair election." *See* [25] Joint Status Report at 2. The WTU indicated that "in accordance with the terms of the agreement in principle with the AFT," it "will not contest the administratorship in further proceedings before this Court." *Id.* The parties indicated that they anticipated filing a stipulation of dismissal by the end of the following week, i.e., by September 24, but the parties have not filed any such stipulation.

Presently pending before the Court is the [26] Motion of Nathan Saunders for Conditional Intervention, filed on September 30, 2010. Nathan Saunders ("Saunders") moves to intervene in this action "or the limited purpose of enforc[ing] the stipulation entered into by the parties in the Joint Status Report." *See* Mot. for Conditional Intervention at 1. That motion is opposed by both the WTU and the AFT, each of which has filed a brief in opposition, to which Saunders has filed a single brief in reply. Also pending before the Court is the WTU's [28] Motion for Dismissals. The WTU asks that the Court conditionally dismiss the WTU's complaint without prejudice and dismiss as moot the AFT's counterclaim. Saunders has filed an opposition to the WTU's motion, to which the WTU has filed a reply. The AFT has filed a [34] Consent Motion for Extension of Time to Respond to Motion to Dismiss, which is still pending before the Court.

For the reasons explained below, the Court shall DENY Saunders' [26] Motion for Conditional Intervention and GRANT the AFT's [34] Consent Motion for Extension of Time to Respond to Motion to Dismiss. The Court shall HOLD IN ABEYANCE the WTU's [28] Motion for Dismissals.

## I. BACKGROUND

The Court assumes familiarity with the facts of this case, which are laid out more thoroughly in its September 1, 2010 Memorandum Opinion. The Court shall limit its recitation

of the facts to those most relevant to the pending motions.

   *A.   The WTU's 2010 Elections for Officers*

The WTU is a subordinate body of the AFT and an autonomous labor organization representing teachers employed by the District of Columbia Public Schools ("DCPS"). Compl. ¶ 3. Pursuant to the WTU Constitution and By-Laws, the WTU was to have completed its 2010 elections in time for newly elected officers to be installed in May and assume office on July 1, 2010. However, the WTU failed to conduct a timely election because it did not have a valid elections committee in place in the spring of 2010. With assistance from the AFT, the WTU certified a new elections committee on May 27.

On June 4, AFT President Randi Weingarten sent an e-mail to declared WTU presidential candidates George Parker, Nathan Saunders, Elizabeth Davis, and Elections Committee Chair Claudette Carson stating in part:

> AFT's limited role in monitoring and assisting with the election of the Election Committee ended with the certification of the results by AAA. The duly-elected Election Committee now has responsibility for conducting the election of officers as described in the WTU constitution and bylaws. Therefore, it is neither necessary nor appropriate to include me and other AFT staff in each communication about the local's internal election process.

WTU's Mot. for Prelim. Inj., Parker Decl. ¶ 24 & Ex. 8 (6/4/10 E-mail). AFT General Counsel David Strom later informed George Parker and Nathan Saunders that "AFT does not become involved in local internal election issues until it is clear that the parties have exhausted their avenues for redress at the local level." *Id.* ¶ 23 & Ex. 7 (6/14/10 E-mail).

Following the certification of the WTU Elections Committee on May 27, there was a dispute within the WTU about whether the Executive Board or the Elections Committee should

3

set the new dates for the election, since the dates provided for in the WTU Constitution had already passed. Parker Decl. ¶ 21. The WTU sought advice from its legal counsel, who rendered an opinion on June 9 that it was the Executive Board, not the Elections Committee, that was empowered to set new deadlines for nominations and elections of WTU officers. *See* Parker Decl., Ex. 2 (6/9/10 Letter from Lee W. Jackson to George Parker). At a meeting held on June 9, the WTU Executive Board passed a resolution setting the WTU's internal election of officers for the fall of 2010. Compl. ¶ 6. The Executive Board's resolution called for the notice of nominations to be sent out by September 30, with election balloting ending by November 30, 2010. *Id.* ¶¶ 7-8.

On June 23, AFT President Weingarten sent a letter to WTU President Parker and the members of the WTU Executive Board expressing concern over the election process for officers, writing "there is no reason why three weeks after the Committee has been seated, the nominations and elections process has not been commenced." *See* AFT's Mot. for TRO & Prelim. Inj., Weingarten Decl., Ex. C (6/23/10 Letter from Randi Weingarten to WTU Executive Board). On June 25, 2010, Parker replied to Weingarten, informing her of the Executive Board's action establishing a new elections schedule. *See* Parker Decl., Ex. 6 (6/25/10 Letter from George Parker to Randi Weingarten).

  B. *The AFT Investigates the WTU*

Following the WTU's failure to proceed with an election immediately after the Elections Committee was put in place, the AFT Executive Council voted to initiate an investigation of the WTU pursuant to its authority to investigate local elections under Article VI, Section 14(b) of the AFT Constitution. Weingarten Decl. ¶ 9. On July 9, President Weingarten sent a letter to

4

George Parker, Nathan Saunders, Elizabeth Davis, and Claudette Carson informing them of the AFT's investigation. Weingarten Decl., Ex. D (7/9/10 Letter). In the letter, Weingarten wrote, "It is manifestly apparent that under the current circumstances of internal struggle that [sic] a timely and proper election for the officers of the WTU is not possible. Therefore, it is necessary and required that the national union step in to ensure an open, transparent and fair election for the WTU members." *Id.* at 2. The AFT Executive Council appointed three AFT Vice-Presidents to conduct the investigation. Weingarten Decl. ¶ 9.

On July 14, AFT General Counsel David Strom sent a Notice of Hearing letter to Parker, Saunders, Davis, and Carson on behalf of the AFT investigatory committee informing them that the committee would conduct a fact-finding hearing on July 21. *See* Parker Decl., Ex. 11 (Notice of Hearing). The Notice of Hearing indicated that the committee would investigate the following issues:

> 1) When should the internal elections for officers and members of the Executive Board of the WTU take place in light of the fact that the precise dates set out in the WTU Constitution and Bylaws for the election could not be met because there was not a duly constituted Elections Committee in place to start the process in the spring of 2010?
>
> 2) Whether the April 30th deadline for submitting nominations petitions set forth in the WTU Constitution and Bylaws should be followed in light of the fact that there was no duly constituted Elections Committee at that time and the Committee had not sent out the Notice of Nominations to the membership?
>
> 3) What is the universe of WTU members who should be eligible to participate in the internal WTU election and should that universe include individuals who were excessed on June 30, 2010?
>
> 4) Whether the recent suspension of salary and leave actions by the WTU President and Executive Board against First Vice President Saunders improperly impair Saunders' ability to run for WTU office.

*Id.* at 2. A day-long hearing was held on July 21, in which various WTU officers and staff appeared and presented evidence and testimony. Weingarten Decl. ¶ 10.

On August 3, AFT President Weingarten sent a letter to WTU members informing them that the investigation committee had made the following conclusions: (1) the election process should start immediately, beginning with the prompt mailing of notice of nominations for all open positions to members; (2) the April 30 petition deadline is no longer operative, and therefore any candidate may submit nominating petitions for any open office; and (3) Saunders's salary should be reinstated because, although the WTU Executive Board had the inherent authority to suspend Saunders' salary, it should not have done so in the middle of the election contest for which Saunders is a candidate. Parker Decl., Ex. 13 (8/3/10 Letter).

On August 4, 2010, the AFT Executive Council issued its Washington Teachers Union Investigation Decision and Order ("Decision and Order"). *See* Weingarten Decl., Ex. E (Decision and Order). The Decision and Order discussed the investigation committee's findings and set forth the Executive Council's decisions with respect to the issues investigated.

With respect to the election schedule, the AFT Executive Council concluded that the WTU Executive Board's decision to schedule elections in the fall of 2010 was "not compatible with the directives in the WTU Constitution that officers be elected and seated by July 1st." Decision and Order at 4. The Council found that "[w]hile . . . it is true that the necessity to conduct an election for members of the Election Committee in May 2010 threw off the normal election schedule, the counting of ballots on November 30, 2010 is too significant a deviation from the intent of the local Constitution." *Id.* The Council acknowledged that there may be practical reasons to wait until fall to conduct the election, such as obtaining a more accurate list

of eligible voters, but that those practical reasons did not justify such a long delay. *Id.* The Council found that the list of eligible voters should be those WTU voters who were eligible on the last payroll period in June 2010. *Id.*

With respect to Saunders, the Council found that during a board meeting on June 15, 2010, the WTU Executive Board had reduced Saunders's salary to zero dollars and instructed the WTU President to notify DCPS that Saunders's release time should not be renewed for the 2010-11 school year. *Id.* at 6. The Council expressed concern over the timing of this action, noting that it occurred in the middle of Saunders's campaign for the WTU presidency. *Id.* at 7. The Council explained that "[o]nce the campaign has begun, heightened scrutiny is needed when an officer is disciplined to ensure that this action is not motivated by retaliation." *Id.* For that reason, the Council determined that the WTU should restore Saunders's pay forthwith and notify DCPS that Saunders's release time from the classroom should be extended at least through the conclusion of the election. *Id.*

On August 13, the WTU Executive Board sent a letter to the AFT Executive Council asking that it reconsider the Decision and Order. *See* Parker Decl. ¶ 37 & Ex. 14 (8/13/10 Letter). On August 16, the AFT denied the request for reconsideration without explanation. *Id.* ¶ 38 & Ex. 15 (8/16/10 Letter from Randi Weingarten to George Parker). In a letter written to George Parker and copied to the WTU Executive Board, AFT President Weingarten stated that

> Unless by noon on Tuesday, August 17, 2010, we receive an unequivocal sworn undertaking from you and the Executive Board . . . to comply in all respects with and to fully cooperate in all good faith the processes previously articulated [under the Decision and Order], an Administratorship shall . . . be established and an Administrator appointed . . . to restore the rights of members in election procedures or representation, to secure and safeguard the vital records and assets of the WTU from immediate threat, and to take such actions as are necessary to protect the

7

> interests of the membership, in accordance with Article VI of the Constitution and Bylaws of the [AFT], particularly Sections 14 and 15 and each of the subsections thereof, and the applicable provisions of law.

*Id.*, Ex. 15. President Parker and the WTU Executive Board did not immediately respond to the AFT's statement.

### C. The AFT Imposes an Emergency Administratorship

On August 17, AFT President Weingarten wrote to WTU President George Parker and informed him that at 11:30 a.m. that day, the AFT Executive Council voted unanimously to place the WTU under a limited emergency administratorship pursuant to Article VI, Section 15(a) and (c) of the AFT Constitution. *See* Parker Decl. ¶ 39 & Ex. 16 (8/17/10 Letter). The letter stated that "[t]his action is part of our ongoing efforts to ensure that the WTU elections are carried out in a manner consistent with the WTU constitution and the AFT Executive Council Decision and Order dated August 4, 2010." *Id.*, Ex. 16. The letter indicated that AFT Southern Regional Director Albert Squire would serve as the administrator. *Id.* President Weingarten appointed three AFT Vice-Presidents to conduct an administratorship hearing.

On August 26, 2010, President Weingarten issued a Notice of Hearing and Grounds for Establishing an Administratorship to WTU President Parker and the members of the WTU Executive Board. AFT's Opp'n to WTU's Mot. for Prelim. Inj., Second Weingarten Decl., Ex. J (8/26/10 Notice). In that Notice, President Weingarten explained that the grounds for the administratorship are:

> 1. The actions by the WTU Officers and Executive Board in refusing to comply with the AFT Executive Council's August 4th Decision and Order[.]
>
> 2. The actions by the WTU Officers and Executive Board in obstructing the implementation of the Executive Council's Decision and Order.

3.  The actions by the WTU Officers and Executive Board in failing to follow the provisions of both its Constitution and Bylaws and the AFT Constitution and Bylaws regarding the frequency of elections for officers and members of the Board.

4.  The WTU Officers and Executive Board's violation of the local's Constitution and Bylaws by holding onto office beyond their elected terms and refusing to conduct internal elections in a timely manner.

5.  The WTU Officers and Executive Board's violation of the democratic rights of the WTU membership to vote for and elect leadership on the timetable that is set forth in the local's Constitution and Bylaws.

6.  The WTU's failure to provide the AFT Administrator the materials and cooperation that he has requested to carry out the election is a violation of the AFT and WTU Constitutions.

7.  Allegations that the WTU Officers and Executive Board have retaliated against one or more insurgent candidates and have used their authority improperly to continue in office and to retaliate against or punish opponents.

*Id.* at 2.  The Notice announced that a hearing would be held on September 10, 2010, in which WTU would have full opportunity to respond to these charges.  *Id.*

### D. *WTU Files This Action*

On August 18, 2010, the WTU filed this action for declaratory and injunctive relief.  The WTU alleged that the AFT's assumption of control over the WTU's elections constituted a trusteeship that was imposed in breach of the Constitution and Bylaws of the AFT and the WTU and in violation of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401-531.  The WTU asked the Court to enter a declaratory judgment finding that the AFT is in violation of the LMRDA and its Constitution and Bylaws and to enjoin the AFT from interfering with the WTU's election of officers.  The AFT filed a counterclaim for declaratory and injunctive relief seeking to compel the WTU to comply with the AFT's Decision and Order and its order of administratorship.  On August 20, 2010, the parties filed cross-motions for

preliminary injunctive relief.[1] These motions were fully briefed by the parties on an expedited basis, and the Court held a hearing on the motions on August 31, 2010.

On September 1, 2010, the Court issued an Order and Preliminary Injunction granting in part the WTU's motion for injunctive relief. As explained in a Memorandum Opinion issued the same day, the Court found that the AFT likely has authority under its Constitution and Bylaws and the LMRDA to impose an administratorship on the WTU for the purpose of conducting a timely election. However, the Court found that the AFT did not have grounds to impose an "emergency administratorship" prior to a hearing under the terms of the AFT Constitution, and therefore the Court enjoined the AFT from intervening in the WTU's elections until an administratorship was ratified after a fair hearing.

On September 17, 2010, the parties filed a Joint Status Report with the Court. The parties indicated that on September 10, 2010, the AFT conducted a hearing to determine whether it was necessary to impose an administratorship on the WTU for the purpose of conducting its elections. Following the hearing, the AFT Executive Council voted unanimously to uphold the hearing board's decision to impose an administratorship on the WTU. A copy of the "WTU Administratorship Hearing and Decision" was attached to the Joint Status Report, containing, *inter alia*, the following orders:

1. Effective on this day an administratorship for purposes of conducting the WTU internal elections shall be implemented.
2. Pursuant to Article IV, Section 15(d) of the AFT Constitution, the Administrator under the direction of the AFT President or her designee, "will be authorized to . . . take such actions as are necessary to protect the interests of the membership" in the conduct of the WTU internal election.
3. In light of the fact that the AFT and WTU constitutions, as well as federal

---

[1] The parties also sought the issuance of a temporary restraining order.

>    labor law, have been violated by the delay in the conduct of the WTU's internal elections, the Administrator shall have the authority, where necessary to perform his election duties, to suspend the provisions of the WTU Constitution and Bylaws.
>
>    . . .
>
> 6. The WTU shall restore the pay and release time status of the General Vice President [Saunders] forthwith.
> 7. Consistent with the provisions of the AFT Constitution in Article VI, Section 15(e) the administratorship shall be concluded when the internal election has been concluded and the officers installed.

*See* [25] Joint Status Report, Ex. 1 at 7-8. This administratorship order was issued to the WTU on September 17, 2010.

In their Joint Status Report, the parties explained that they had "been in discussions regarding the imposition of the administratorship and the timeline and rules by which the election will be conducted." They further stated that, "[a]s a result of these discussions, the parties had an agreement in principle in which WTU will consent to the administratorship and to take such steps as are necessary to conduct the election in accordance with the rules set forth in the Decision and to cooperate with the appointed administrator in developing the voter eligibility list and such other steps as are necessary to the conduct of a prompt and fair election." The WTU explained that it did not consent to or agree with the AFT's rationale for imposing an administratorship, but, "in accordance with the terms of the agreement in principle with the AFT, [the WTU] will not contest the administratorship in further proceedings before this Court." The parties explained that they anticipated filing a stipulation of dismissal by the end of the following week.

The parties have not filed a stipulation of dismissal, but they have continued to proceed with a schedule for conducting the election. The AFT has indicated that ballots for the election

11

have been mailed to the WTU membership and they will be counted on October 27, 2010, with the winners installed as officers on October 28, 2010.

## II. LEGAL STANDARD

Intervention in a civil action, whether as of right or permissive, is governed by Federal Rule of Civil Procedure 24. The standard for intervention as of right is governed by Rule 24(a):

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Unequivocally, the recognized requirements for intervention as of right in this Circuit are: (1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties. *See Smoke v. Norton*, 252 F.3d 468, 470 (D.C. Cir. 2001); *Williams & Humbert Ltd. v. W. & H. Trademarks Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988); *see also Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). On the issue of lack of adequate representation by the existing parties, the movant need only "sho[w] that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). A party seeking leave to intervene as of right pursuant to Rule 24(a) must further demonstrate that it has both constitutional and prudential standing to participate as a party in the case. *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) ("Thus, a party that seeks to intervene as of right must demonstrate that it has standing to participate in the action.").

Alternatively, Rule 24(b) authorizes permissive intervention for anyone who files a timely motion and "has a claim or defense that shares with the main action a common question of law or

12

fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to permit intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### III. DISCUSSION

The issues presently before the Court involve whether there remains an active justiciable controversy between the AFT and the WTU and whether Saunders has any right to intervene in the dispute. Saunders's motion for conditional intervention is premised on the theory that the AFT and the WTU have stipulated that the WTU will comply with the terms of the AFT's administratorship, which includes a directive that Saunders's salary and leave status be restored forthwith. The AFT and the WTU dispute that their "agreement in principle" amounts to a stipulation, and they argue that Saunders has no standing to enforce such an agreement. The AFT and the WTU agree that their cooperation over the administratorship makes further involvement by this Court unnecessary, but they disagree about whether the Court should dismiss this action or merely stay further proceedings until the conclusion of the election. The Court shall address these issues below.

 *A. Saunders' Motion for Conditional Intervention*

Nathan Saunders, the present General Vice President of the WTU,[2] moves to conditionally intervene as a defendant in this action "for the limited purpose of enforcing the stipulation agreed upon by the parties in the Joint Status Report." Saunders seeks intervention because he contends that the WTU has breached its obligation to restore his salary and inform

---

 [2] Although Saunders's term of office should have expired earlier this year, he has maintained his office pending the election of new officers.

13

DCPS of his leave of absence from the classroom. Saunders contends that despite the WTU's "agreement in principle" to comply with the AFT's administratorship, it has refused to compensate him. Saunders also contends that the WTU's failure to comply with the administratorship order has damaged him both personally and as an insurgent candidate for WTU office. *See* Aff. of Nathan Saunders ¶¶ 14-18. Saunders also claims that the WTU has reached a separate agreement with the AFT that will allow the WTU to ignore the AFT's official order to restore Saunders's pay and leave status. *Id.* ¶ 12. Therefore, he argues that the AFT is not adequately representing his interests. *See* Saunders's Mem. at 14.

Because the sole purpose of Saunders's intervention is to enforce the parties' "joint stipulation," the Court shall assume *arguendo* that Saunders meets the standard for intervention under Rule 24 and consider whether there is any basis to grant his motion to enforce the "joint stipulation." Saunders characterizes the statements made by the parties in their Joint Status Report as a stipulation that the parties have settled this case, which this Court may enforce in its inherent authority. *See Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969) ("It is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it."). Saunders also argues that the doctrine of judicial estoppel precludes the parties from asserting that they have reached a settlement and then taking actions contrary to that assertion. *See* Saunders's Mem. Supp. Mot. to Enforce Joint Stipulation at 11-13. Saunders therefore asks the Court to compel the WTU to comply with the terms of the AFT's administratorship order requiring the WTU to restore Saunders's pay and leave status.

However, the Court does not agree with Saunders that the statements made by the parties

in their Joint Status Report qualify as an enforceable "stipulation" or settlement agreement. Both the AFT and the WTU have explained in their opposition briefs that they did not intend their statement in the Joint Status Report to constitute a "joint stipulation." *See* [30] AFT's Opp'n to Mot. to Intervene at 4 n.1; [29] WTU's Opp'n to Mot. to Intervene at 2-3. The parties filed their Joint Status Report in response to a minute order issued by the Court on September 9, 2010, asking the parties to "indicat[e] how they propose to proceed with this litigation." In response, the parties indicated that they had reached an "agreement in principle." The Court understands the phrase "agreement in principle" in accordance with its ordinary meaning to indicate that the AFT and the WTU have resolved most, but not all, of their disputes with respect to the imposition of the administratorship. The Court also understands that an "agreement in principle" is not a final agreement because negotiations may break down and return the parties to their original litigating positions. Therefore, the Court understood the parties to be reserving their rights to continue prosecuting this litigation. Contrary to Saunders's interpretation of the Joint Status Report, this Court was not misled by the parties' statements that they had an agreement in principle that would likely obviate the need for further intervention by this Court. As such, there is no joint stipulation or settlement agreement for this Court to enforce.

Moreover, even if the parties had entered some sort of enforceable stipulation, it is far from clear that Saunders has standing to enforce it. The parties indicated in their Joint Status Report only that the WTU would consent to the administratorship and take other steps necessary to conduct the election. The parties did not mention Saunders or in any way indicate that the WTU had agreed to comply with all of the terms of the AFT's administratorship order. The issue contested in this action is the lawfulness of the AFT's administratorship of the WTU; the issues

of how and whether the AFT administrator decides to act are not properly before the Court. Therefore, even if the WTU has agreed not to contest the AFT's administratorship, it is not at all clear that the AFT administrator must force the WTU to take action with respect to Saunders. Accordingly, the Court finds that there is no basis to grant Saunders's motion to enforce the parties' "joint stipulation." Because Saunders has moved to intervene solely for this limited purpose, the Court shall therefore DENY Saunders's motion for conditional intervention.

The Court notes that Saunders filed an action in the Superior Court of the District of Columbia, which the court dismissed without prejudice, and he has an action pending before the Public Employee Relations Board pertaining to the WTU's actions against him. *See Saunders v. Wash. Teachers' Union, Local #6 of the Am. Fed'n of Teachers*, 2010 CA 004845 (D.C. Super. Ct. Sept. 24, 2010) (oral order dismissing without prejudice); WTU's Opp'n to Mot. to Intervene, Ex. D (copy of Saunders's Public Employee Relations Board complaint, filed Sept. 29, 2010). Therefore, he is not without recourse to recover the pay and leave status of which he believes the WTU has wrongfully deprived him.

### B. *The WTU's Motion for Dismissals*

The WTU seeks to have the Court dismiss the AFT's counterclaim as moot and conditionally dismiss its complaint in light of the WTU's cooperation with the AFT regarding the administratorship. The AFT has not yet filed a response to the WTU's motion for dismissals, but it has filed a [34] Consent Motion for Extension of Time to Respond to Motion to Dismiss. In that consent motion, the AFT asks that the Court extend the time for the AFT to respond to October 29, 2010, after the election has been completed. The AFT indicates that at that time, the parties may be prepared to file a stipulation of dismissal. Because the WTU consents to this

extension of time, the Court shall GRANT the AFT's motion and hold in abeyance its decision on the WTU's motion for dismissals.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall DENY Nathan Saunders's [26] Motion for Conditional Intervention, GRANT the AFT's [34] Consent Motion for Extension of Time to Respond to Motion to Dismiss, and HOLD IN ABEYANCE the WTU's [28] Motion for Dismissals.  An appropriate order accompanies this Memorandum Opinion.


Date: October 22, 2010                                          /s/
                                                    **COLLEEN KOLLAR-KOTELLY**
                                                    United States District Judge